## Case No. 3,891.

### DICK et al. v. LAIRD.

[4 Cranch, C. C. 667.][1]

Circuit Court, District of Columbia. Nov. Term, 1835.

RECEIVERS FOR PARTNERSHIP — CREDITOR'S BILL.

Upon a creditor's bill against the surviving partner of a mercantile firm, a receiver may be appointed.

This was a bill in equity by creditors against the surviving partner of the firm of John Laird & Son, for a settlement of the partnership accounts, &c., and for the appointment of a receiver.

The counsel for the plaintiffs cited Bloodgood v. Clark, 4 Paige, 576; Vann v. Barnett, 2 Brown, Ch. 158; Creuze v. Bishop of London, Id. 253; Philips v. Atkinson, Id. 272; Jenkins v. Jenkins, 1 Paige, 243; Osborn v. Heyer. 2 Paige, 342; Harding v. Glover, 18 Ves. 281.

The answer admitted all the material facts of the bill.

THE COURT (nem. con.) ordered a receiver to be appointed, and to give security in the sum of $10,000.

[NOTE. For decision on the merits of this case, see Case No. 3,892.]

## Case No. 3,892.

### DICK v. LAIRD.

[5 Cranch, C. C. 328.][1]

Circuit Court, District of Columbia. Nov. Term, 1837.

FACTORS—ADVANCES TO PARTNERSHIP — APPLICATION OF CONSIGNMENTS — POWER OF SURVIVING PARTNER.

1. Where, during a long period of mercantile intercourse between the principal and factor, it appeared that the principal was permitted, upon shipments of tobacco, to ·draw bills for the estimated value thereof. which bills the factor was in the habit of accepting and paying, whether the cargoes were, or were not sold; the factor being generally in advance, and charging interest upon his advances, and giving credit for interest upon the net proceeds of the cargoes, shipments made, after the dissolution of the firm of the principal, by the death of one of the partners, to the factor, (upon the credit of which shipments bills were drawn by the surviving partner, according to the usual course of their former dealing,) were held to have been made according to such usual course, and were not to be applied to the liquidation of the gen-

[1] [Reported by Hon. William Cranch, Chief Judge.]

eral debt due by the principal to the factor at the time of the dissolution; but were to be applied, in the first place, to meet the bills drawn upon the credit of such shipments; and the surplus only, if any, to be applied to the liquidation of the general balance due by the principal to the factor.

2. But if the bills thus drawn by the surviving partner, and paid by the factor, exceeded the net proceeds of the cargoes thus shipped after the dissolution of the firm, the excess was not chargeable to the estate of the firm, but to the survivor only; it not being competent for him to charge the estate of the firm, by drawing bills after the dissolution.

Bill in equity by Elizabeth Dick, in behalf of herself, and such other creditors of the late firm of John Laird & Son, and of John Laird, as shall choose to be made parties, and contribute to the expenses of the suit; against William Laird, surviving partner of the firm of John Laird & Son, and sole executor of the will of John Laird, deceased. The bill seeks to charge the joint effects in the hands of the surviving partner, and the separate estate of John Laird, deceased, in the hands of his executor, and for an account. and for a receiver, &c. The cause came before the court, upon an exception to the auditor's report, disallowing a claim of James Dunlop & Company, of London, for a balance of £5,020. 2s. against the effects of the late firm of John Laird & Son, in the hands of William Laird. the only surviving partner.

The case was argued by Mr. Redin, for Dunlop & Co., who cited Hammonds v. Barclay, 2 East. 227, that an acceptor has a lien on the shipments; and Hammersley v. Lambert, 2 Johns. Ch. 508, that dealing with a surviving partner does not discharge the old firm.

Mr. Marbury and Mr. Key, contra, cited Dob v. Halsey, 16 Johns. 34, Campbell v. Mathews, 6 Wend. 551, and Evernghim v. Ensworth, 7 Wend. 326, that a partner has no right to pay his private debts with partnership funds. Clayton's Case, 1 Mer. 572, 604, that if the creditor has kept a continuous account after the death of one of the debtor partners, the subsequent payments are to be applied to the extinguishment of the old debt. Simson v. Ingham, 2 Barn. & C. 65, S. P.; Pemberton v. Oakes, 4 Russ. 154, 168; Abel v. Sutton, 3 Esp. 108; Lansing v. Gaine, 2 Johns. 303; Sandford v. Mickles, 4 Johns. 227; Devaynes v. Noble, 1 Mer. 602; and Brice's Case, Id. 620, —that the surviving partner had no right to draw bills so as to create a new obligation upon the old firm. They contended, also that Dunlop & Company were bound to apply the proceeds of the joint property shipped after the dissolution of the firm, ·to extinguish the debt of the firm, and should have charged the bills of William Laird, drawn after the dissolution, to his separate account. The bills were not drawn specifically upon the credit of any. particular shipment, but

generally, on the promise of shipments; nor are the acceptances charged specifically against correspondent shipments. Dunlop & Company ought not to have permitted William Laird to draw, when they knew he was trading on the partnership funds, after the death of John Laird, at the hazard of his heirs, and ought not to be permitted to resort to his estate.

Mr. Jones, in reply, cited McLeod v. Drummond, 17 Ves. 152; Keane v. Robarts, 4 Madd. 332, and Hamersley v. Lambert, 2 Johns. Ch. 508, as to the powers and duties of a surviving partner; and Sleech's Case, Palmer's Case, and Clayton's Case, 1 Mer. 538, 623, as to the application of payments. Simson v. Ingham, 2 Barn. & C. 65, S. P. See Newmarch v. Clay, 14 East, 239.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent), delivered the opinion of the court.

This cause now comes before the court upon an exception to the auditor's report disallowing a claim of James Dunlop & Company, of London, for a balance of £5,020. 2s. against the late firm of John Laird & Son in the hands of William Laird, the only surviving partner. The principal question is, what was the intent with which William Laird shipped to James Dunlop & Co. the tobacco which was on hand in Georgetown, at the death of Mr. John Laird, and which had been purchased in his lifetime with the joint funds of John Laird & Son; and with what intent it was received by Dunlop & Co.; for that intent, if ascertained, must govern the application of the proceeds of the sales of that tobacco. The intent and understanding of the parties constituted the contract between them. It appears by the bill and answer, and the accounts of James Dunlop & Co. with John Laird & Son, and of John Laird & Son with James Dunlop & Co. as kept by them respectively, that John Laird & Son were merchants residing in Georgetown in the District of Columbia, and that James Dunlop & Co. were merchants residing in London. That a long course of business had been carried on between them, for many years, which consisted of shipments of cargoes of tobacco by John Laird & Son to James Dunlop & Co. for sale, in London or elsewhere, by the latter firm, for and on account of the former. That the understanding and practice, if not the express contract, was, that John Laird & Son should be permitted, upon every shipment so made, to draw upon James Dunlop & Co. at sixty days' sight for the probable amount of the proceeds of sales of the tobacco so shipped and consigned to them; and that they would accept, and, at maturity, pay such bills, whether the tobacco should then have been sold or not, and whether they should or should not then have actually received the proceeds thereof; it being understood that in-

terest should be charged upon their acceptances, and credited upon the proceeds of sales. It was therefore a case of principal and factor. Each consignment was a bailment for sale and remittance; not a general payment on account. It was the fund to meet the bills drawn, and to be applied in the first place solely to that object. If the proceeds of the sales exceeded the bills, the surplus, and that only, could, in good faith, be applied by James Dunlop & Co. to the extinguishment of any general balance of account which might be in their favor. If the agreement had been that James Dunlop & Co., instead of accepting the bills of John Laird & Son, should remit the proceeds of sales by bills drawn in Europe upon merchants in this country in favor of John Laird & Son, the nature of the business would have been the same. It would still have been a case of principal and factor. Dunlop & Co., it is true, had a lien on the goods of their principal for any general balance due to them; but they were not bound to resort to it; nor could they do so in good faith after so long and uniform a course of credit, as justified Laird & Son in expecting that their bills would be honored, unless Dunlop & Co. should have cause to doubt the solvency of Laird & Son. The object of Laird & Son was to receive here, as soon as possible, the proceeds of the sales so that they might invest them in other cargoes, and thus continue a business advantageous to both parties; to Laird & Son by the profit on the sales; and to Dunlop & Co., the factors, by their commissions for transacting the business. In this manner the business was regularly carried on, Dunlop & Co. being generally in advance, until the death of Mr. John Laird, on the 11th of July, 1833, when it appears by the accounts, as kept by both firms, that there was a balance due to Dunlop & Co. of £4,232. 6s. 3d. For this balance Dunlop & Co. had a right to charge the joint estate of John Laird & Son, and the separate estate of each of the partners, in case the joint estate should be insufficient; and have still a right so to do, unless that balance has been paid. But it is contended that that balance has been paid, by consignments (made by W. Laird the surviving partner) of tobacco which was on hand, in this country, at the time of Mr. John Laird's death; and which had been purchased, in his lifetime, with the joint funds; although, at the time of making those consignments, the surviving partner drew bills on Dunlop & Co. the consignees, for the full value of the tobacco thus consigned, which bills they accepted and paid before the proceeds of the sales of that tobacco came to their hands.

It is supposed in argument that when these consignments were made, no appropriation was made of the proceeds by either party, the consignor or consignees; and that, as this is a case between conflicting creditors, the consignment, or the proceeds thereof, must

be considered as payments made without application to any particular items of the account, and therefore the court must apply them to the oldest items on the debit side; which would include the whole balance due at the time of the death of Mr. John Laird; and that as the estate of Mr. John Laird is not liable for any balance due upon transactions since his death, the claim of Dunlop & Co. was properly excluded by the auditor from all participation in the funds of the firm of John Laird & Son, and in the estate of the deceased partner John Laird. This doctrine is built upon the decision of Sir William Grant, the master of the rolls, in Clayton's Case, which constitutes a part of the case of Devaynes v. Noble, 1 Mer. 585, which is a leading case upon this point, and has been confirmed by several subsequent cases. In that case, Clayton had deposited money in a banking-house consisting of Devaynes and four other partners. Devaynes died, and the other partners continued the business under the same name for several months, and then became bankrupt. At the time of the death of Devaynes, Clayton had in the bank £1,713, and before he deposited any further sums he drew out several sums, amounting to £1,260, reducing his balance to £453. From this time to the bankruptcy he both paid in and drew out considerable sums; but his payments were so much larger than his receipts, that at the time of the bankruptcy his cash balance in the hands of the surviving partners exceeded £1,713, the amount of his cash balance at Devaynes's death. It was admitted that the £1,260 which he drew out after Devaynes's death, and before he made any new deposits, extinguished so much of the old balance, and the contest was only as to the £453. As to which it was contended by the representatives of the deceased partner, Devaynes, and so decided by the master of the rolls, that although Clayton subsequently deposited more money than he drew out, so that his balance at the time of the bankruptcy was larger than it was at Devaynes's death; yet as he had, after his new deposits, drawn more than £453, without applying his drafts to any particular sums deposited, his drafts were to be applied to the oldest debits in his account; and therefore the whole balance due at Devaynes's death was extinguished before the bankruptcy. In order to make that case applicable to the present, it must be shown that the consignments of the tobacco which was on hand at the death of Mr. John Laird were payments upon general account without any particular appropriation or application of the proceeds of the sales. We think they were not. The former consignments, in the life time of Mr. John Laird, were never considered, by either of the firms, as payments, but as consignments by the principal to his factor, or agent, for sale and remittance; for which services the factor was to receive his wages, by way of commission. It appears by the accounts

of the parties with each other, that Laird & Son, when they made their consignments, drew bills for the estimated proceeds of the sales, which bills were accepted and paid by Dunlop & Co., who appear, during the lifetime of Mr. Laird, to have been content to await the contingency of the proceeds of the sales exceeding the amount of the bills drawn upon them, so as thereby to liquidate the balance of their general account, which, however, was, in the mean time, bearing interest. That the bills were thus drawn upon the shipments, appears not only by the accounts of the parties with each other, as exhibited and proved, but by the averments of the plaintiff in her bill, and by the supplemental answer of the defendant, which is directly responsive to the allegations of the bill, and drawn out by exceptions to his first answer upon this very point.

The plaintiff, in her bill, avers "that large quantities of tobacco, or the proceeds of sale thereof, were in the hands of the said J. Dunlop & Co., of London, at the death of the said John Laird; and large quantities of tobacco, on hand at the death of the said John Laird, were further shipped to them after the said John Laird's death, by the defendant as surviving partner, to be sold and disposed of on account of the firm. A statement, in detail, of all these tobaccoes, and the proceeds of sale thereof, the defendant is called on to produce." And the plaintiff, in her bill, prays that the defendant "may state what tobacco, and the cost and value thereof, belonging to the said concern, was in Europe and in this country (distinguishing respectively) at the death of the said John Laird, not then sold, or the account of sales of which were not then received; when the said tobacco was shipped; how disposed of; when the same was sold, and by whom; and to whom the same was shipped; and what were the proceeds of such sales; and when, by whom, and how received and applied." And she further in her bill prays that the defendant "may state and show an account of all drafts and bills drawn by him, since the death of his father, on James Dunlop, or James Dunlop & Co., of London, or any other person or persons, for the proceeds of tobacco sold or shipped, with the dates and amounts of the said bills, and what they produced, and how he applied the proceeds thereof."

The plaintiff took many exceptions to the defendant's first answer; one of which (the sixth) was, "Because the defendant has failed to state and show, as called for by the complainant, an account of all drafts and bills drawn by him since the death of John Laird, on James Dunlop, or James Dunlop & Co., of London, or any other person or persons, for the proceeds of tobacco sold or shipped, with the dates and amounts of said bills, and what they produced, and how he applied the proceeds thereof." And another exception (the fourth) was, "Because the defendant has failed to exhibit a statement, in

detail, of the tobaccoes, and the cost thereof, and the proceeds of sale thereof, in the hands of J. Dunlop & Co., at John Laird's death, the property of the said late concern of John Laird & Son; and also the quantities and cost of the tobaccoes shipped to the said Dunlop & Co., of London, after John Laird's death, the property of the said late concern, and the proceeds of sale of all said tobaccoes."

In answer to these averments and calls for information and exceptions, the defendant, in his supplemental answer, among other things, says, that "James Dunlop & Co. had no funds of the partnership estate in their hands at John Laird's death. On the contrary, when the tobacco in their hands at that time, and the bills of exchange drawn thereon, at John Laird's death, together with interest, were respectively brought to account, James Dunlop & Co. were creditors of John Laird & Son, at John Laird's death, £4,232. 6s. 3d. sterling." And again he says, in answer to the fourth exception, "that the tobacco and the cost thereof, and the proceeds of the sale thereof in the hands of James Dunlop & Co. at John Laird's death, and the amount drawn thereon, were as follows," &c. He then gives a particular statement of the several cargoes in the hands of J. Dunlop & Co. and the proceeds thereof, and says: "Amount of the bills drawn in John Laird's life upon such shipments, (the amount and date of each being shown in the partnership books, and in the account of James Dunlop & Co., marked 'A,' of the 1st of August, 1835, filed in this cause with the auditor, and which are hereby referred to as part hereof,) £40,114. 15s. 2d., to which add interest and several small payments, as stated in said books and account, and the balance due James Dunlop & Co. at the death of the said J. Laird was £4,232. 6s. 3d." Again he says, "that the quantities and cost of the tobacco shipped to James Dunlop & Co. by this defendant, as surviving partner after the said John Laird's death, and the proceeds of sale thereof, and the amount of bills drawn upon those shipments, by this defendant, as surviving partner, were as follows:—

| | Cost. | Proceeds. |
|---|---|---|
| Brig Zior. | 331 hhds. $38,088.63 | £6,095. 3s. 9d. |
| Ganges. third voyage, | 301 " 10,593.07 | 2,484. 0  0 |
| To France, per Cazenove and Utica, | 84 " 8,860.00 | 2,516.3  2 |

and the amount of bills drawn by this defendant as surviving partner, upon such last-mentioned shipments, (the amount and date of each are also shown in the partnership books, and in the account of the said James Dunlop & Co., marked 'B,' of the said 1st of August, 1835, filed with the auditor in this cause, and which are hereby referred to as part hereof,) £10,908. 6s. 8d., to which add interest and some small payments stated in said books and accounts, and the balance due James Dunlop & Co. on these last-named shipments and drafts, was and is £787. 15s.

9d." At the foot of the accounts of James Dunlop & Co., marked "A" and "B," and referred to by William Laird, the surviving partner, as part of his answer, is the following certificate signed by him: "These accounts are correct. The account A shows the shipments prior to John Laird's death, to James Dunlop & Co., and the tobacco then in their hands, or for which accounts of sales had not been rendered; and all the drafts drawn prior to his death, and the balance due James Dunlop & Co. after realizing the proceeds of those shipments. This account B, shows all the shipments made by me to them, as surviving partner, of all the tobacco here at John Laird's death, and the drafts which I drew, as surviving partner, on those shipments. William Laird." These accounts show the dates of the several bills drawn by the surviving partner, after the death of John Laird; and the books of John Laird & Son, as kept by the surviving partner, show the times of the shipments of the tobacco on hand; and by comparing the dates of the bills with the times of shipment, a strong presumption arises independent of all other evidence, that the bills were drawn upon the consignments, and accepted on the faith that the proceeds of the sales should come to the hands of the acceptors, to meet or reimburse their acceptances.

Taking the whole evidence together, that fact seems to be proved beyond all doubt. The fact, that Dunlop & Co. accepted the bills upon the faith of the consignments, is, to our minds, conclusive evidence that the acceptances and the consignments were intended, by both parties, to meet and to be set against each other, and that the proceeds of the consignments were in the first place to be appropriated and applied to the acceptances. This, we think, was clearly the case during the lifetime of Mr. Laird. It is stated in the answer of Mr. W. Laird, and admitted in argument, "that at the death of the late John Laird, the late concern of John Laird & Son had a considerable amount of tobacco on hand here, destined for shipment in like manner; and for the conveyance of a great portion of which a vessel had been chartered, and was engaged in loading; and James Dunlop & Co., of London, advised of the intended consignment of her cargo to them; all previous to the death of John Laird; and that the concern were on the look-out for another vessel to take another cargo over and above the one last-mentioned."

It appears by the accounts of the parties, and is admitted in argument, that the tobacco thus on hand at the death of Mr. Laird, was immediately shipped and consigned, by the surviving partner, to Dunlop & Co., agreeably to the advice which had been forwarded to them in the lifetime of Mr. Laird; and that shipment, it seems, was destined to be, and was, made "in like manner;" that is, in the same manner as the former shipments had been made, namely, for sale and remit-

tance; or to meet the acceptances of the bill drawn upon it. The engagement thus made in the lifetime of Mr. Laird, was promptly and honorably fulfilled by the surviving partner. It was an engagement as binding in honor and conscience upon the survivor as any other contract made in the lifetime of his partner; and Dunlop & Co., being as much bound by the long and uniform course of business between the two houses, to accept the bills drawn by the surviving partner upon the tobacco of the firm shipped by the surviving partner, as they would have been to accept the bills drawn by the firm upon tobacco shipped by the firm in the lifetime of Mr. Laird, accepted the bills drawn by the surviving partner upon the tobacco thus shipped. By accepting these bills, Dunlop & Co. admitted that this shipment was not a general payment on account; and could not, in good faith, have applied the proceeds of the sales of this tobacco to the general balance due to them by Laird & Son; nor could they, in good faith. after the long and uniform course of dealing between the two firms, have refused to accept the bills of the surviving partner, after advice of the shipment, unless, after being advised of the intended consignment, they had given notice to the surviving partner, before the bills were drawn, that they would not accept them; or unless they had reason to believe the firm of Laird & Son to be insolvent, or in doubtful circumstances. The drawing and acceptance of the bills drawn upon this shipment is evidence that both parties considered the proceeds of sales as appropriated to the payment of the acceptances in the first instance. and not as a general payment, the appropriation and application of which has not been made by either party. Mr. Laird, the surviving partner, had no other fund in the hands of Dunlop & Co. upon which he could draw, than the tobacco thus shipped. It would seem, therefore, that nothing could be more evident, than that the proceeds of the shipment were appropriated, in the first place, to the discharge of the bills thus drawn thereupon. Such being the case, and there being no general payments on account made by Laird & Son to Dunlop & Co. which can be applied to the general balance due to them at the time of the death of Mr. Laird, that balance has never been paid, and they have a right to look to the estate of the deceased partner, if there be a deficiency of joint assets.

Thus far we have been considering only the liability of the joint estate of Laird & Son for the balance due by them to Dunlop & Co. at the time of the death of Mr. John Laird. But Dunlop & Co. claim against the same joint estate. a further sum of £787. 15s. 9d., being the amount overdrawn by W. Laird, the surviving partner. upon the shipments of the tobacco which was part of the joint estate. and which was shipped, after the death of Mr. John Laird. and consigned to Dunlop & Co. in like manner as the former

shipments had been. It is contended that the estate of John Laird & Son ought not to be charged with the amount thus overdrawn. Mr. W. Laird, the surviving partner, had certainly a right to sell the tobacco of the firm remaining on hand at the time of the death of Mr. John Laird; and to sell it here, or in Europe, according to his discretion. Deeming it, no doubt, best to sell it in Europe, he shipped it to Dunlop & Co. for sale, and as the means of getting the proceeds into his hands, in order that he might pay the joint debts and sell the estate, he had a right to draw bills upon the shipments; but he could not, by drawing those bills, create a new responsibility upon the joint estate. In settlement of the partnership he could be charged only with the net proceeds of the sales of the tobacco. If he drew for more and his factor accepted and paid the bills, the acceptor could look only to William Laird, the drawer, for the amount overdrawn. By the death of Mr. John Laird, the partnership was dissolved. The survivor could not, by drawing bills in the name of the firm, bind the joint estate in any new obligations. If he had shipped the tobacco to a factor with whom Laird & Son had not had any previous dealings, and had drawn bills for more than the net proceeds, and the factor had accepted and paid those bills. he could have had no pretence to charge the balance upon the joint estate of Laird & Son; nor could Dunlop & Co., when they knew. at the time of accepting these bills, that the partnership of John Laird & Son had been dissolved by the death of one of the partners. They could only have accepted the bills upon the faith of the consignments, and the personal credit of William Laird, the drawer. If Mr. W. Laird sold these bills. and applied the whole proceeds of the sales. thereof to the discharge of partnership debts, he will. in the settlement of the partnership account, have credit for the full amount thus applied; that is, to the full extent of the proceeds of the sales of the bills. If Dunlop & Co. should recover from W. Laird the amount which he has overdrawn, he would have no credit therefor in the partnership account, because he would already have had credit for the whole amount of sales of his bills. If, instead of paying partnership debts with the proceeds of the sales of his bills. he applied them to his own use, and Dunlop & Co. should recover from him the amount thus overdrawn, he could have no pretence for charging it in the partnership account, because the partnership never derived any benefit from the bills. Thus, in whatever way the subject is considered, we think it very clear that the joint estate of Laird & Son cannot be charged with the £787. 15s. 9d. overdrawn by Mr. W. Laird upon the tobacco of Laird & Son. shipped to Dunlop & Co. after the dissolution of the partnership by the death of Mr. John Laird. Upon the whole. then, we are of opinion that the balance of £4.232. 6s. 3d. sterling, due by John Laird & Son to

James Dunlop & Co. at the time of the dissolution of the firm of John Laird & Son, is properly chargeable upon the joint estate of that firm; and that, if the joint effects are insufficient, James Dunlop & Co. may resort to the separate estates of the surviving, and of the deceased, partner; and that the exception to the auditor's report. to that extent, is supported; and as to the £787. 15s. 9d., being the amount overdrawn by Mr. W. Laird upon the tobacco of John Laird & Son, shipped after the death of Mr. John Laird, the exception is overruled; and the auditor will reform his report and statement of the accounts accordingly.