## JOHN L. MATTHEWS AND ANNA A. McCANN *vs.* MINNIE TARGARONA ET AL.

*Legacy Given for a Consideration—Priority of Payment—Burden of
Proof—Demonstrative Legacies—Abatement of Legacy—Renuncia-
tion of Will by Widow—Jurisdiction of Equity—Costs.*

When a general legacy is given in satisfaction of a subsisting debt due by
the testator to the legatee, or when given in consideration of the relin-
quishment of a right by the legatee, as of her dower or thirds by a
widow, such general legacy, in the event of an insufficiency of assets,
is entitled to preference of payment over other general legacies.

The legatee who claims priority of payment because his legacy was given
upon a consideration must show that the testator was under a subsist-
ing legal obligation at the time of his death.

When a legacy is given in compensation for services rendered by the leg-
atee gratuitously, there being no legal obligation upon the testator to
pay for the same, the legacy is not entitled to priority but abates pro-
portionately with other general legacies, in case of an insufficiency of
assets.

A legacy or a sum of money made payable from the proceeds of a claim
owned by the testator and collected after his death, is a demonstrative
legacy.

Demonstrative legacies given for a consideration are entitled to prefer-
ence over other demonstrative legacies payable out of the same fund
and given gratuituously, in case the fund is inadequate to the payment
of all legacies in full.

A testator bequeathed a sum of money to a woman and stated that it was in consideration of her personal services and attention to him during sickness, and also for money loaned by her to him. He also bequeathed a sum to a man and stated that it was in consideration of money loaned. The evidence in the case showed that some of the services rendered were gratuitous, and that the charges for money loaned were grossly excessive, and in the case of each legacy for much less than the amount of the legacy. *Held*, that these legacies are not entitled to priority of payment over other legacies, but they all abated proportionately if there be an insufficiency of assets to pay them all in full.

When a testator sets apart a particular fund for the payment of a number of legacies, the presumption is that he did not intend to give one legacy a preference over the others in payment, in the absence of a definite statement showing his intention to give a preference.

When a will makes no provision for the testator's widow, it is not necessary for her to renounce the will, but she is entitled to demand the share of the estate to which a widow is entitled who has not waived her rights.

Equity has jurisdiction of a bill to enforce payment of a legacy.

Costs of a suit to establish a priority in payment of a legacy decreed to be paid out of the testator's estate after deducting the widow's share.

*Decided November 16th, 1906.*

Appeal from Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*S. S. Field*, for the appellants.

*Wm. Milnes Maloy*, for Peter Q. Targarona *et al.*, appellees.

*A. Kingsley Love* and *Malcolm V. Tyson* (with whom was *Geo. G. Shepherd* on the brief ), for other appellees.

BOYD, J., delivered the opinion of the Court.

The principal questions in this case for our consideration are first: Have the legacies of the appellants, left them by the last will and testament of Peter Targarona, priority over those

given to his three children?   2nd. Is the widow of said testator entitled to her thirds out of the personalty, before any of the legacies are paid?

1. The testator left five legacies, each for the sum of two thousand dollars—they being to his son Peter, Mrs. McCann, Mr. Matthews, and two to the Safe Deposit and Trust Company of Baltimore City, in trust for his son Marshall, and his daughter Vivian, respectively. That company was named as executor, but renounced and Messrs. Tyson and Field were appointed administrators with the will annexed. The will recites that the testator's estate consists of a claim against the United States Government for twenty thousand dollars, and that his attorney was to receive one-half of the amount recovered. After his death, ten thousand dollars was collected by the attorney and one-half thereof paid over to the estate. After payment of funeral expenses, commissions, costs, etc., there only remains about four thousand dollars for distribution, and inasmuch as the five legacies amount to ten thousand dollars, the questions above stated have arisen. The Court below passed a decree holding that the widow was entitled to one-third of the estate, after payment of the debts and funeral expenses, less $150 already paid her by the administrators, and that Mr. Matthews and Mrs. McCann were not entitled to priorities over the other legatees, but that all the legacies abated proportionately. From that decree Mr. Matthews and Mrs. McCann took this appeal.

The legacy to Mrs. McCann is stated in the will to be "in consideration of her personal services and attention rendered me, during my sickness, and also for money loaned me by her, to pay for the support and maintenance of my two children, Marshall P. Targarona and Vivian M. Targarona, and also moneys loaned me to pay the rents of the houses my children have resided in with their mother during my sickness," and that to Mr. Matthews is said to be "in consideration of money loaned me during my sickness to support my wife and two children and other assistance rendered me."

The theory of the appellants is that their legacies were for

valuable considerations, and hence have priority over the other three, inasmuch as the latter were mere bounties.    In 2 *Williams on Executors* (7 Am. Ed.) 669, after stating the rule that legacies in their nature general abate *pro rata*, in case of deficiency of assets, and that there is no preference among them, the author thus speaks of a well-recognized exception to the general rule: "But this must be understood only as among legatees, who are all volunteers; for if there be any valuable consideration for the testamentary gift, as where a general legacy is given in consideration of a debt owing to the legatee, or of the relinquishment of any right or interest, as of her dower by a widow, such legacy will be entitled to a preference of payment over the other general legacies, which are mere bounties ; and it should seem that the preference will be allowed, though the bequest should exceed the value of the right or interest relinquished by the legatee. But it is requisite that the right or interest should be subsisting at the testator's death."    In 2 *Woerner on Administration*, sec. 452, the same principle is announced and discussed, as it is in 1 *Am. and Eng. Ency. of Law*, 48; 3 *Pomeroy's Eq. Juris.*, sec. 1142, and in *Buchanan* v. *Pue*, 6 Gill, 112, the Court quoted with approval from 1 *Roper on Legacies*, 297, stating the same doctrine as to a general legacy given in consideration of a debt.    In *Durham* v. *Rhodes*, 23 Md. 242, our predecessors used this language: "A general legacy to a widow, in lieu of dower, accepted by her, stands upon a different footing from other general legacies merely voluntary.    It will be entitled in payment of it to a preference over such general legacies, even when the amount of the bequest exceeds the value of her dower; for in this matter the testator is the only and best judge of the price at which he purchased it."    The Court there speaks of such a widow as "a favored purchaser for a fair consideration."    Authorities are too numerous to admit of any question about the general doctrine stated above, and the only difficulty which is likely to arise is in its application to the particular case before the Court.

It must be admitted that a legacy to a widow in lieu of

dower is placed in the same general class, as one to a creditor in payment of a debt, in the statement of the principle by the authorities.   But there ought to be, and is, some difference between them—such as justifies the Court in being more lib-eral in the application of the rule in favor of a widow than in the case of an ordinary creditor.   There may be circumstances where it is of the utmost importance to have property freed from a widow's dower, and where it may be supposed to be to the interest of the widow to assert her right to it.   The value of it cannot, therefore, always be accurately determined, and it may be thought proper by a testator to pay more for it than it is really worth.   If she was not given preference, she might lose much of it in some cases, for the statutes of many States require her to renounce a will within a specified time, if she desires to stand on her rights given her by law. In *Addison* v. *Addison*, 44 Md. 182, the legacy to Mrs. Addi-son was "in lieu of her dower" in the lands "and all her rights as widow."   If preference had not been allowed her by the Court, she would have been a large loser.   But in the case of a creditor he may elect to proceed, as such, against the es-tate, and can do that at any time within the statutory period of limitations—provided the estate is not fully settled, which it cannot well be without his knowledge.  This case well illus-trates the danger of the rule of priority in favor of legatees who are creditors, if precisely the same effect must be given to their legacies as would be to a widow in lieu of her dower or thirds.   Portions of the claims of both appellants are of very doubtful character, while it is shown by the evidence that something is due to each of them.   Although the testator told some persons that $2,000 would not pay the appellants for what he owed them, he may have, and properly did include, in such estimate, services rendered him which would be regarded in law as gratuitous.   In *Buchanan* v. *Pue, supra,* the bequest was stated to be "In consideration of the particular care and attention shown me by my sister, Priscilla Buchanan, during my protracted sickness, etc., and the rule we are considering was sought to be applied, giving the legatee priority.   The

Court held that although the services were in the highest degree meritorious they were gratuitous and there was no legal claim. Some of the services rendered by each of the appellants were apparently gratuitous and some of the charges made in their accounts stated in the bill of complaint are exorbitant and grossly excessive. For example, Mrs. McCann charged for boarding and taking care of him for the last nineteen months of his life, $50 per month, yet the evidence shows, beyond all question, that in the latter part of his life there were signs of great poverty around him, and he was the recipient of help from a charitable organization. One of the officers of that society said: "There was nothing but poverty there;" "they did not have any food;" "they did not have anything to eat;" "I gave her (Mrs. McCann) two dollars out of my pocket because it was a pitiable case, and she said he did not have a loaf of bread in the house for the next day;" and used other similar expressions in his testimony. Another member of that society said "he seemed in abject poverty," and coal and groceries were furnished by this society. This was during the period for which she has charged $50 per month, and during those nineteen months and the eight previous months, for which she charged $30 per month, she claims to have loaned him $705—an average of $26 per month. Such claims could not receive the approval of any intelligent jury, under such circumstances as we have stated.

The first item in Mr. Matthews' account, as stated in the bill was "Said Targarona collected and retained during all said seven years, rents of houses belonging to said Matthews amounting to $15 per month, $1,260." Another item is for twenty-seven months' rent at $12 per month for the house he and Mrs. McCann lived in, amounting to $324.00—covering the same period for which she was making the extravagant charges stated above. It will be observed that the testator said that the bequest was "in consideration of money loaned me during my sickness to support my wife and two children and other assistance rendered me." The account of Mr. Matthews

amounts to $1,994, without interest, and there is not a single
item in it which corresponds with the statement in the will,
unless it be brought under the expression "other assistance
rendered me," or it be assumed that the $15 per month, re-
tained for seven years, was paid to the wife and two children
of the testator which, to say the least, is not satisfactorily
proven.    The record shows that he collected rent for other
people and transacted more or less business during a good
part of the seven years.    It would be very difficult to recon-
cile the statement in the will with the account in the bill, by
the testimony in this record.    The testator died April 23rd,
1903, and Mrs. McCann only met him in the summer of 1900,
and although she only knew him for about three years, ac-
cording to her claim, she boarded him and took care of him
for thirty-four months without receiving any pay—notwith-
standing she was poor herself, was largely dependent upon the
wages of her two minor children and during the last twenty-
seven months loaned him $705.    According to the accounts ·
of the two, he was getting his board and attention without
paying anything for them in cash and an average of $26.00
per month from Mrs. McCann and $15 per month from Mr.
Matthews, besides what he was making in his business, and
yet was in abject poverty and asked for assitance from a
charitable organization.    Such claims lack signs of fair dealing
and are too doubtful and uncertain to justify any tribunal in
allowing all of the items, if suits were brought for their recov-
ery.    Notwithstanding this, must these legacies be allowed
priority over the others?    It is true that the testator had a
right to leave his money as he saw fit, and he has fixed the
amount to be paid to each of the appellants at $2,000, but it
is equally true that in order to entitle a legatee to priority over
the others, as a creditor, there must be a *subsisting, valid debt*
at the death of the testator.    We do not mean to say that a
debt barred by the Statute of Limitations could not support a
legacy, for in that case there would still be the obligation, al-
though it could not be enforced by reason of the statute, and
moreover the testator could revive it by a new promise, but a

legacy given by reason of a sense of moral obligation or as compensation for services, or other favors rendered gratuituously, when there is no *legal obligation* to pay, does not constitute such a valuable consideration as to entitle the legacy to priority in payment. *Duncan* v. *Franklin*, 43 N. J. Eq. 145; *Buchanan* v. *Pue, supra.* For some such instances in which legacies purporting to be for considerations have been held not to be entitled to preferences, see 1 *Ency. of Law*, 50, etc. When a Court is satisfied that the consideration for a legacy has not been established, as a subsisting, valid debt, for anything like the amount of the legacy, there can be no reason or principle of law particularly in a Court of equity, requiring the Court to give it a priority over other legacies. It would be permitting a legacy founded on a false basis, or at least not shown to be on a true one, to deprive other legatees of what in justice and good conscience they are entitled to. It would be a dangerous doctrine for, although we do not mean to charge the appellants or either of them with being guilty of it, as there is no evidence on the subject, it is easy to see how a person situated as this testator was could, in his condition of health, and with his surroundings, be imposed on. The rule stated above that a widow should be allowed a preference even when the legacy exceeds the value of her dower, should not therefore be applied in favor of a creditor when testimony has been taken and it is shown, as we believe it to be in this case, that the alleged considerations 'for the legacies are not sustained, as subsisting valid legal claims, to the amounts of the legacies. It is impossible from this testimony to determine, with any certainty, just what is due the respective appellants, but if we allow as priorities such sums as we feel sufficiently certain of, they would probably not receive as much as they can get by sharing equally with the other legatees. For these reasons, therefore, we are of the opinion that a preference should not be given to the legacy of either of the appellants.

We have not discussed the question of the competency of the appellants to testify. Much of their testimony was clearly incompetent, under what we have said about the statute now in

force in *Smith* v. *Humphreys*, recently decided by this Court *ante*, p. 285, but inasmuch as the exceptions filed referred to certain pages of the testimony in the lower Court, it would be difficult if not impossible, for us to know just what was excepted to. Exceptions to testimony should be so framed as to clearly point out that objected to, so it can be designated in this Court in case of appeal. The simple way of doing that is by numbering the questions, which Examiners ought to do, unless the attorneys deem it unnecessary. But if we accept all the evidence of the appellants as admissible, it would not change our conclusion, as stated above, as other testimony and the circumstances surrounding the parties overcome much of that of the appellants.

It will also be noticed that the authorities, in announcing the rule mentioned above, speak of *general* legacies. Those given by this will are more properly speaking what are called demonstrative, and the Court below so held, in that they were to be paid out of the proceeds of the claim against the Federal Government. In *Gelbach* v. *Shively*, 67 Md. 501, ALVEY, C. J., said: "Ordinarily a legacy of a sum of money is a general legacy; but where a particular sum is given, with reference to a particular fund for payment, such legacy is denominated in the law a *demonstrative* legacy." In this will the testator not only said that his estate consisted of the claim against the United States Government, but in the clause naming the executor he added: "And when my said claim shall be collected from the United States Government by said Deposit and Trust Company, to pay the legacies as herein named." Then follow the five legacies of $2,000 each in separate clauses. So without deeming it necessary to further discuss this subject, we think it is sufficiently shown that "a particular sum is given with reference to a particular fund for payment," to use the language of JUDGE ALVEY, *supra*, and the Court below was right in holding the legacies to be demonstrative, although as affecting the conclusion stated above, it is not material whether they be general or demonstrative.

A demonstrative legacy is so far general that if the fund out

of which it is to be paid proves to be insufficient the legatee can proceed against the general assets of the estate for the balance. "But such legacy is so far specific that it will not be liable to abate *with general* legacies upon a deficiency of assets, except to the extent that it is to be treated as a general legacy, after the application of the fund designated for its payment." *Gelbach* v. *Shively*, *supra*. We have not been able to get much light from the authorities as to how far one or more of a number of *demonstrative* legacies, payable out of one fund, should be given preference over others of that kind, by reason of such provisions as those in this will. But upon reason there does not seem to be much ground for distinction, when as in this case *all* are demonstrative, excepting in so far as that reflects upon the intent of the testator. While demonstrative legacies do not abate until general legacies are exhausted, they do abate with specific legacies, after the general ones are exhausted, in order to pay debts. In *Addisan* v. *Addison, supra,* it was held that even specific devises and legacies must abate in favor of a legacy to the widow, and that the real and personal estate, specially devised must contribute *pro rata*, according to their respective values, to the payment of the widow's legacy. It would seem to follow from that decision that demonstrative legacies might also be required to abate in favor of other demonstrative legacies, given for a consideration, or if it was the intention of the testator that some should have preference over others, in case of a deficiency. We think, however, that the fact that they are demonstrative is an important one in ascertaining the intention of the testator. When the will was made, the Court of Claims had allowed the testator twenty thousand dollars for his claim and it was then pending before Congress. There can be no doubt the testator expected ten thousand dollars to be realized out of it, as his share. He either forgot that there would be expenses connected with the settlement of his estate, which might come out of the ten thousand dollars, or he thought he would have enough outside of that to pay expenses. The former is more probable, as he said in the will that his estate consisted of that claim, and

he had no reason to suppose he would accumulate any property or save any money before his death in the then condition of his health.    But he set apart a special fund which he evidently supposed would be ten thousand dollars, and divided it into five parts of two thousand dollars each.    He went into considerable detail as to the legacy to each of his two minor children—directing it to be held by the Trust Company for the benefit of the respective children, until each was twenty-five years of age, and that it should then be paid over, and providing that if either should die before reaching that age that the legacy should be for the benefit of the other.    He also directed that the interest should be paid to the mother of those children *for their support and maintenance* until they were twenty-one and then to them until they were twenty-five.  He declared that his wife had no interest in his estate, as he claimed she had waived it, and requested the Trust Company to resist any demand made by her, giving as a reason, "as her two children are receiving over one-third of my estate."    It is evident therefore that he intended that the five legatees should share equally in this fund.    He may have stated what he did in the legacies to the appellants in order to show why he gave them, and not with any intention of giving them preference over the other three, but however that may be the fact of his thus dividing this fund into five equal parts and directing his executor, when it was collected, "to pay the legacies as herein named," is a strong indication of his intention that they should take equally.    The evidence shows that he was strongly attached to the two minor children and his other son was propably a namesake, being named Peter.    His will shows that he had been divorced from his second wife, and states that he was remarried to her "for the love of the two children," and especially for the sake of Vivian, who was born pending the divorce proceedings, "in order to protect her good name and honor."

It is true that it is a settled rule of equity that that there is no exemption from the rule (that all general legacies abate *pro rata*) in favor of legacies to children or other near relatives.

·JUDGE WOERNER, in sec. 452 of his excellent work cited above, qualifies that statement by adding, "unless they be for the maintenance and support of such as stand in near relation to the testator, dependent for his bounty, and otherwise unprovided for." But without stopping to determine whether that qualification can be made to apply against legacies given for a consideration, such circumstances can be considered, and are of great import, in ascertaining the intention of a testator from the face of the will, which after all is the important question. The burden is always on the legatee claiming priority to establish it and, as said in 1 *Ency. of Law*, 51, "The testator may, of course, give one legacy a preference over others in case the assets are insufficient, but his intent to do so must be clearly manifest upon a fair construction of the instrument."

When a testator sets apart a particular fund for the payment of a number of legacies of equal amounts, as was done in this instance, the fair presumption is that he did not intend to give priority to one or more over the others, in the absence of some definite statement to the contrary. It is equivalent to giving that particular fund to the legatees named, in equal shares. It is said in *Williams on Executors*, and other authorities that demonstrative legacies have a lien on the designated fund, and hence are placed on the same plane as specific legacies and devises. They are preferred to general legacies because it is to be inferred that by referring to specific parts of the estate for their payment, the testator intended them to be preferred to the other legacies which he had not secured, and when a fund has been thus set apart for the payment of five legacies of equal amounts, and it partially fails, it would seem to be contrary to the manifest intention of the testator, to give preference to two of them over the others. If the testator actually owed the appellants, they have their remedy and are not obliged to take the legacies, but can sue for the debts. In such a proceeding, it can be determined what was really due, and there will be no danger of giving a preference for services for which they may not be entitled to priority.

2. It remains for us to determine whether the widow is en-

titled to her thirds before any of these legacies are paid. The testator did not leave her anything by his will, and it is therefore not a question between a legacy to a widow, in lieu of dower and her thirds, and other legacies. It is purely and simply one of her rights under the law. The testator stated in his will that she had waived that right, but there is no proof of that, and as she was his wife at the time of his death, she is entitled to one-third of his personalty after the payment of debts, funeral expenses, etc. The right of the widow to one-third of her husband's personalty was established in this State in 1798—it having been so determined in *Griffith v. Griffith,* 4 H. and McH. 101. That has been the law here ever since, subject, of course, to certain statutory provisions, in reference to the effect of her not renouncing a will, etc. As this will made no provision for her, there was nothing in it for her to renounce, and there is nothing to show that she had in any way waived or barred her rights. The Court below was therefore right in decreeing that she was so entitled and that the legacies mentioned in the will abate proportionately.

3. There can be no doubt about the jurisdiction of a Court of equity in a proceeding to recover a legacy. Such a suit can be maintained, even where a bond has been given to pay debts and legacies. Section 93 of Art. 16 of Code; *Cherbonnier* v. *Goodwin,* 79 Md. 59; *Myers* v. *Forbes,* 74 Md. 360. There are other decisions of this Court sustaining the jurisdiction of equity in such cases, and a number from other States are cited in 18 *Am. and Eng. Ency. of Law,* 803.

We are also of opinion that the Court below was right in directing that the costs of this litigation should be paid out of the estate, after the widow's share is deducted and we will so order.

> *Decree affirmed, the costs above and below to be paid out of the estate, after first deducting the amount due the widow.*