# CHARLESTON.

CRESAP *v.* CRESAP.

*(HOLT, JUDGE, absent.)

Submitted June 12, 1890.—Decided December 6, 1890.

1. WILLS—POWER.

Where a testator, in the first clause of his will, uses the following language: "I give and bequeath to my beloved wife, A. C. C., in trust and for her support and maintenance during her life, all my estate both real and personal with full power and privilege to sell and convey any, all or so much of my real estate in such a manner as she may see fit, in as full and complete manner as I myself can do, to sell and dispose of my personal estate, or so much as she may see fit for her own support, according to her condition in life, and for the benefit of my estate, so far as she may see proper"—these words will not confer upon the wife either a fee-simple in the testator's real estate or absolute property in his personalty.

2. WILLS.

Said first clause is not inconsistent with the subsequent portion of said will, which distributes the residue of his estate, both real and personal, as follows: One half thereof to be divided equally between his brother and two sisters; one fourth thereof to his niece, and the remaining fourth to be disposed of by his wife, which he gives her full power to do.

3. WILLS—CONSTRUCTION OF WILL—POWER.

The cardinal rule in the construction of wills is to be guided by the intention, and when that is ascertained, unless it contravenes some settled principle of law, it will be carried into effect.

4. WILLS.

A devise of real and personal estate to A., subject to the support of C., according to her condition in life, is not void for uncertainty as to quantity for the reason that that is certain which may be made certain.

*A. F. Haymond* for appellants, cited:

1 Redf. Wills (4th Ed.) 174, 175, 432, 433, n. 16, 434, 435; 32 Gratt. 357, 361-365; 2 W. Va. 62; 5 W. Va. 356; 23 W. Va. 166; 23 W. Va. 36; 2 Leigh 377; 29 Gratt.

---

*Case submitted before Judge Holt's appointment.

692; 2 Ves. Jr. 333; 3 Ves. Jr. 7; 1 Jarm. Wills (4th London Ed.) 678-682; 4 Dow. 145.

*F. Woods* for appellee, cited:

3 Lom. Deg. 116, *117; 79 Va. 251, 253; 1 Redf. Wills, Rule 21; Id. *433; W'ns Ex'rs 714; 35 Md. 519; 23 W. Va. 37; 2 Vern. 181; Amb. R. 750; 1 P. W'ms 149; 3 Ves. 7; Theob. Wills, 354, 356; 2 Rop. Leg. *1417, *1431; 2 Redf. Wills, *391, 409; Sto. Eq. § 979a; Hawk. Wills *164; Schoul. Wills § 595; 2 Ves. Jr. 532; 1 Jarm. Wills *363; 4 Kent Comm. *270; 2 Min. Inst. 970; Beach Wills. 533; Fitz. 314; 2 Johns. 391; 5 Mass. 500; 4 Leigh. 408; 4 Rand. 547; 32 Gratt. 357; 20 Gratt. 692; Id. 705; 78 Va. 197; 13 W. Va. 519.

ENGLISH, JUDGE:

This suit was brought by Agnes C. Cresap, executrix of the last will and testament of Charles J. P. Cresap, deceased, against the Bank of West Virginia of Clarksburg and others, alleging that said Charles J. P. Cresap departed this life in the month of August, 1886, largely indebted to the Bank of West Virginia of Clarksburg and others, to the plaintiff unknown, having on the 15th day of May, 1884, duly made his last will and testament, which was admitted to probate, and recorded in the office of the clerk of the County Court of the county of Randolph on the 25th of October, 1886; that said testator, at the time of his death, was seised of a large real and personal estate, and that the personal estate of said defendant was insufficient to pay the indebtedness aforesaid, and that it was necessary to subject certain real estate of which he died seised to sale, and apply the proceeds thereof in and towards the payment of said debts, in order to fully discharge and satisfy the same; that said decedent was seised of a certain tract of land lying on the waters of Dry Fork of Cheat river, containing twelve hundred acres more or less, which is described in an exhibit filed with the bill; that the defendant, the Bank of West Virginia of Clarksburg, recovered a judgment against the decedent in his lifetime, which was docketed in the judgment-lien docket in the clerk's office of the County Court

of said county, which remains partly unpaid, and is a lien on said tract of land. The complainant prays the guidance of the court in the execution of her executorial office; that said land may be. sold to pay the debts of decedent in the order of their priorities, and that the remainder of the proceeds of such sale, if any, be paid over to her, to be disposed of according to the provisions of said will; and that a commissioner be directed to ascertain the debts of said decedent and their priorities and to settle the accounts of plaintiff as such executrix.

The will of said Charles J. P. Cresap is exhibited with plaintiff's bill, and reads as follows: "I, Charles J. P. Cresap, of Beverly, Randolph county, West Virginia, this day made my last will and testament. I give and bequeath to my beloved wife, Agnes C. Cresap, in trust and for her support and maintenance during her life, all my estate, both real and personal, with full power and privilege to sell and convey any, all, or so much of my real estate in such a manner as she may see fit, in as full and complete manner as I myself can do, to sell and dispose of my personal estate, or so much as she may see fit, for her own support, according to her condition in life, and for the benefit of my estate, so far as she may see proper. At the death of my dear wife, Agnes C. Cresap, I desire the residue of my estate, both real and personal, to be distributed as follows: One half of the same, after giving my dear wife a full and liberal support, to my brother Gustavus J. Cresap and to my sisters, Mary B. Cresap and Rachel R. Cresap, to be equally divided between them; to our dear devoted niece Nannie I. Evans the one half of the residue or the one fourth of the remainder, leaving the one fourth of the remainder of my estate to be disposed of by my wife,. Agnes C. Cresap. In case my dear wife does not dispose of the same, which I here desire to give her full right and power to do, then I desire the remaining one fourth at my wife's death, to be equally divided between my brother Gustavus J. Cresap and my unmarried sister or sisters at her death. I hereby constitute and appoint my beloved wife, Agnes C. Cresap, my sole executrix, with full power to sell any or all of my estate, real or personal, at public or private sale as she may see proper, with

full power to convey the same in as full and complete a manner as I can do; and I desire her to, qualify as such executrix without being required to execute bond. Written and subscribed in my own name, May 15th, 1884. CHARLES J. P. CRESAP."

The plaintiff also filed an amended bill, in which she alleges that she intermarried with said testator in January, 1870, and from that time until his death, which took place in said county in 1886, they lived together as husband and wife, in uninterrupted domestic peace and harmony, but that no issue resulted from their marriage; that by the first clause of her husband's will he devised and bequeathed to her in trust, for her support and maintenance during her life, all his estate, real and personal, with full power and privilege to sell and convey the whole, or any part thereof, in such manner as she might see fit to do, in as full and complete manner as said testator could himself have done; that by this clause, and others of similar import, the testator, her husband, clearly intended to confer upon and invest her with the complete, absolute title in fee-simple to all of his real and personal estate, subject only to the payment of his debts and the necessary charges of its administration; and she charges that the limitation of this absolute title so devised and bequeathed to her in favor of said Gustavus J. Cresap, Rachel R. Cresap, and Mary B. Cresap and Nannie I. Evans are consequently inoperative and void, and can only be held to indicate on the part of the testator a wish or request that if any part of the estate so devised to her should remain unconsumed or undisposed of at the time of her death such remainder should be disposed of by her will in the proportion of one moiety of such remainder to said Gustavus J. Cresap, Rachel R. Cresap, and Mary B. Cresap, in equal portions, and one half of the remaining moiety of such remainder should go to Nannie I. Evans, and the residue to such persons as the plaintiff may appoint, and upon her failure to make such appointment then to pass to said Gustavus J. Cresap, and to such of his sisters as might remain unmarried at the time of her death; and she prays that said will may be construed by the court, and her rights, powers, and duties under the provision of the will may be

ascertained and declared by the decree of the court, in order that she may administer the said estate according to the true intent and meaning of said will; and for general relief.

Three of the defendants, viz., Gustavus J. Cresap, Mary B. Cresap, and Rachel R. Cresap, filed an answer to plaintiff's bill and amended bill, in which they say they desire a construction of said will, but do not admit that the testator intended to confer upon and invest the plaintiff with the complete, absolute title in fee-simple to all his real and personal estate, subject only to the payment of debts and the necessary charges of administration, and that the limitation of this absolute title so devised and bequeathed to her in favor of defendants is inoperative and void; and they claim that the first clause of said will conveys all this estate, real and personal, to the plaintiff, in trust for her maintenance and support during her life, and the simple power to sell and convey the testator's realty is not inconsistent with said trust, but that the proceeds of the sales of said realty continues in her hands as trust funds, the income or interest thereof only to be appropriated or used for the support and maintenance of the plaintiff during her life, and that the principal, at the plaintiff's death, becomes part of the residue of the testator's estate, one half of which the defendants are entitled to absolutely and without condition, and one fourth thereof upon condition as set forth in said will; and they insist that the Court, in construing said will, should give force and effect to every clause and part thereof, and that the same can be done and the intention of the testator carried out in behalf of defendants. The other defendants appeared and demurred to the said amended bill, but afterwards withdrew their demurrer, and waived their right to answer the same. The plaintiff replied generally to said answer filed by Gustavus J. Cresap, Mary B. Cresap, and Rachel R. Cresap. .

Upon this state of pleading the court, proceeding to construe said will, decreed that the plaintiff Agnes C. Cresap has under said will full power and authority to sell, convey, and transfer the said property, both real and personal, and that under said will she is the absolute owner of said personal estate, and the absolute owner in fee-simple of any

real estate held byhim in fee-simple, and as to any estate not held by him in fee-simple she, under said will, hath succeeded to all rights held thereto by him at the time of his death ; and a commissioner was appointed to whom an order of reference had been made in the cause to ascertain the amount and priorities of the debts of said testator, and to settle the accounts of said executrix, and was directed to proceed with said accounts.

From this decree the defendants Gustavus J. Cresap, Rachel R. Cresap, and Mary B. Cresap, by their counsel, applied for and obtained this appeal and *supersedeas.*

Did the decree complained of properly construe the last will and testament of Charles J. P. Cresap, and carry into effect the intention of said testator ? This is the question presented for our consideration. In the case of *Whelan* v. *Reilly,* 5 W. Va. 356, this Court held that " when the language of the testator is plain and his meaning clear, the courts have nothing to do but to carry out the will of the testator, if not inconsistent with some rule of law." The will in this case appears to have been written entirely by the testator, and although it does not appear to have been written with the precision, accuracy, and clearness, with which it might have been if prepared by some one more accustomed to the preparation of such documents, yet I think, when the paper is taken by the four corners, and properly examined, the intention of the testator is plainly manifest.

In the case of *Tebbs* v. *Duval,* 17 Gratt. 349, the court said : "Where the will affords no satisfactory clue to the real intention of the testator, the court must from necessity resort to legal presumptions and rules of construction; but such rules yield to the intention of the testator, apparent in the will, and have no application, where the intention thus appears"—and when we ascertain what his intention was, from the words he has used, we shall have construed his will, and it should be carried into effect unless it contravenes some settled rule of law. See *Graham* v. *Graham,* 23 W. Va. 36, where it is said : " The intention of the testator must be gathered from the will itself whenever it is possible to do so." Also : " If the testator uses lan-

guage which can be construed so as to carry the general intent and purpose into effect, it is the duty of the court so to construe the language as to accomplish that object." *Liston* v. *Jenkins*, 2 W. Va. 62.

In the case of *Couch* v. *Eastham*, 29 W. Va. 784 (3 S. E. Rep. 23) this Court held that in the interpretation of a will the true inquiry is, not what the testator meant to express, but what do the words used express? In the will we are considering the testator commences the disposition of his property in the following words: "I give and bequeath to my beloved wife, Agnes C. Cresap in trust, and for her support and maintenance during her life, all my estate, both real and personal, with full power and privilege to sell and convey any, all, or so much of my real estate, in such manner as she may see fit, in as full and complete manner as I myself can do, to sell and dispose of my personal estate, or so much as she may see fit, for her own support, according to her condition in life, and for the benefit of my estate, so far as she may see proper." Now, if the testator had omitted from this clause the words "in trust and for her support and maintenance during her life," and also the words "to sell and dispose of my personal estate, or so much as she may see fit, for her support, according to her condition in life, and for the benefit of my estate, so far as she may see' proper," I would have no hesitation in saying said testator intended by this portion of his will to give his wife a fee-simple in the realty and absolute property in the personalty; but these limiting words are used by the testator immediately in connection with the language which confers the estate upon her. When we ask the question: How does he give it to his wife? the answer is prominent, and apparent on the face of the will, as plain as words can make it, "in trust and for her support and maintenance during her life," and this language applies both to real and personal estate.

It may be asked: Why then did the testator confer on his wife full power and privilege to sell and convey any, all or so much of his real estate in such manner as she might see fit, in as full and complete a manner as he himself could do? The fact, that the testator conferred this power and

privilege rather supports than antagonizes the position assumed and contended for by counsel for the appellants, that the first clause of said will did not confer upon his wife the fee-simple of the real estate therein mentioned, but only gave it to her "in trust and for her support and maintenance during her life," because, if he intended to devise her the fee-simple, and had thought he was doing so, there would have been no necessity of conferring upon her the right to sell and convey it, as the fee-simple would carry the right to convey with it.

Again, as he proceeds to deal with his personal estate, he authorizes her to sell and dispose of his personal estate, as she may see fit, for her own support according to her condition in life and for the benefit of his estate, so far as she may see proper. Would he have used this language if he had intended that she should become the absolute owner of his personal property? If so, why does he provide that she may use her discretion in selling it, but directs how the proceeds shall be applied, to wit, for her own support *according to her condition in life and* for the benefit of his estate, adding the words "so far as she may see proper;" that is, as I understand it, she had the right conferred upon her by these words to sell all of his personal estate, or so much as she saw fit, for her own support, and so far as she might see proper to sell the same for the benefit of his estate. Now, if he intended all of said personalty to go to her, why does he direct any portion to go to the benefit of his estate?

Passing on he says: "At the death of my dear wife, Agnes C. Cresap, I desire the residue of my estate, both real and personal, to be distributed as follows." If the position contended for by the appellee's counsel were the correct one, where would there be any *residue* of his estate to be distributed? But the testator appears to have thought there would be a *residue* not only of real estate but of personalty also, for he says, "the residue of my estate, both real and personal," and, proceeding, he says, "One half of the same," that is, of this *residue*, "after giving my dear wife a full and liberal support, to be divided equally between my brother Gustavus J. Cresap and my sisters,

Mary B. Cresap and Rachael R. Cresap." To his niece, Fannie I. Evans, he gave the one half of the residue, or one fourth of the remainder, leaving the one fourth of the remainder (that is, after carving out her support for life) to be disposed of by his wife, Agnes C. Cresap. Now, could it possibly have been his intention to give her all of his estate, both real and personal? If so, why does he expressly say she may dispose of one fourth of what remains, after deducting her support for life? And he adds, to make it more emphatic and explicit: "In case my dear wife does not dispose of the same, which I here desire to give her full right and power to do," (not for her support, and not for the benefit of his estate, but absolutely, because this disposition is unlimited)—then he desires that fourth to be divided between his brother Gustavus J Cresap, and any unmarried sister or sisters at her death. While it is true that under this clause the wife would take an absolute estate in said fourth and the limitation over to his brother and sister or sisters is void, yet it shows clearly that he did not intend to confer a fee-simple or absolute property by said first clause on his wife.

In Redfield on the Law of Wills (volume 2, p. 729, § 51) the author says, it was held in the Supreme Court of the United States, in the case of *Smith* v. *Bell*, 6 Pet. 68, and by reference to the report it will be found that Chief Justice MARSHAL delivered the opinion, that, a bequest to the testator's wife of all " my personal estate *etc.*, which personal estate I give and bequeath unto my said wife, to and for her own use and benefit and disposal, absolutely, the remainder of said estate, after her decease, to be for the use of Jesse Goodwin," testator's son, gave the remainder of said estate, after her decease, to the son with as much certainty as the preceding words gave the whole estate to the wife ; that the intent to make a provision for the son was as clearly expressed upon the face of the will as that of making a provision for the wife ; that if full effect is given to the latter the former is expunged from the will ; that all the words of the will were equally the language of the testator ; that the court was not at liberty to set aside the last words of the instrument any more than those that

came earlier; that the whole will is to be taken together, and so construed as to give effect to every portion of it if possible. The limitation in remainder shows that in the opinion of the testator the previous words had given only an estate for life. This was the sense in which he used them, and it was his intention to give the personal estate to his son after the death of his mother."

In the case of *Harrison* v. *Harrison's Adm'x*, 2 Gratt. 1, in which the court was called upon to construe the last will and testament of R. Harrison, the will was written by the testator, as in this case, and the clause thereof quoted in said decision comprised the entire will, with the exception of the introduction, which clause read as follows: "In the utmost confidence in my beloved wife I leave to her all my worldly goods, to sell or keep for distribution amongst our dear children as she may think proper. My whole estate, real and personal, are left in fee-simple to her, only requesting her to make an equal distribution amongst our heirs, and desiring her to do for some of my faithful servants whatever she may think will most conduce to their welfare, without regard to the interest of my heirs. Of course, I wish first of all that all my debts shall be paid. This is my only will. R. HARRISON.

The court of appeals of Virginia, in construing this will, held "(1) that the widow is in justice subject to the payment of the testator's debts, with the legal title to the whole estate, real and personal; (2) that she takes the beneficial interest in the estate for her life; (3) that the children of the marriage take a vested remainder in fee in the estate, to commence in possession at the widow's death, or earlier, at her election; (4) that the widow may make advancements to the children, at her discretion, so that they all ultimately receive an equal share of the estate; (5) that she may employ a reasonable portion of the estate for the benefit of the slaves; (6) that she has power to sell all or any part of the estate, real or personal, for payment of debts, or more convenient enjoyment, advancement, or division; that precatory words in the will are sufficient to create a trust where the subject and object are certain. An uncertain charge upon an estate does not render the subject so

uncertain as to prevent the raising of a trust by precatory words in a will."

Judge BALDWIN, in delivering the opinion of the court, on page 14, says: "Where a testamentary benefit contemplated is direct and primary, it is obvious that there is no room for a distinction between the force of peremptory and precatory words. Thus, in the devise of an estate or a tenement, or the bequest of a horse, or a sum of money, the effect is the same whether the testator employs the language of gift, grant, or conveyance, or that of request, recommendation, or even advice, however awkward or inappropriate any of the latter might, in some cases, seem. The difficulty arises where there is first a devise or bequest of the property to one with the addition of the words of request, recommendation, or hope in behalf of others, and it consists in the question whether the testator's intent is decisive in their favor or merely suggestive or advisory to the first taker. Now, to make that question turn upon the precise intrinsic import of the very words employed, upon the supposition advanced by some that the testator always understands clearly their true force and meaning, would involve us in verbal criticisms, and chain us down to a literal interpretation, with what success in ascertaining the testator's intentions, common sense, the best and safest guide in such matters, will readily answer. A testator's desires in regard to the disposition of his property to be collected from his will ought not to be the less obeyed because he has confided the execution of them to another, unless it appears that he designs to subject his own wishes and expectations to the caprice or inclination of the person so intrusted. This idea is quaintly but comprehensively and forcibly expressed by Lord ALVANLEY, M. R., in *Malim* v. *Keighley*, 2 Ves. Jr. 335, where he says: 'Whenever any person gives property, and points out the object, the property and the way it shall go, that does create a trust unless he shows clearly that his desire expressed is to be controlled by the party, and that he shall have an option to defeat it.' If this were not so I cannot doubt that the confidence of testators would often be abused, and their testamentary plans defeated. The present case may be tested by the mere question emphatically

and vividly put by the appellant's counsel: If the widow should give away the whole of the estate to strangers, can any one deny that it would defeat the testator's manifest intention? The question gives the answer, and that answer is decisive."

I have made this extended quotation from the opinion delivered by Judge BALDWIN on account of the great similarity between the clause therein construed and the provisions of the will under consideration, and the direct applicability of the reasoning used therein to the questions raised in this case. We can not resist the conclusion that the testator, Cresap, intended to create a trust. The words, "in trust and for her support and maintenance during her life," coupled with the clause granting to her his estate both real and personal, will admit of no other construction. And again the fact, that the testator in the clause appointing her his executrix thinks it proper to confer upon her full power to sell any or all of his estate, real or personal, at public or private sale, as she may see proper, "with full power to convey the same in as full and complete a manner as I can do," clearly indicates to my mind, that he did not intend by the first clause in his will to create a fee-simple as to his real estate or absolute property as to his personalty, for the reason that it would not have been necessary to confer such power, if he had intended to give the fee-simple and absolute property, as the right to sell and convey would have passed to her with the title. While it is apparent that the testator intended to provide a support for his wife, it is also just as apparent that he intended to create a trust, and he clearly points out the objects of that trust. The property is given in trust, and for her support.

If it was his intent to create this trust we can not disregard such intention. We must conclude that said testator authorized his wife to sell and convey his estate for convenience, so that in case she might see fit to sell any or all of his real estate conveyances might be made without trouble or expense, and to avoid the necessity of having the others who might be interested in the proceeds join in such conveyances; and these sales were to be made, " so far as she might see proper," for two purposes—*First*, for her support, according to her condition in life; and, *second*, for the bene-

fit of his estate. The will then proceeds to point out the objects of such trusts, as follows: At the death of his wife, and after she has enjoyed a support according to her condition in life out of his estate, he desired one fourth of the remainder to be disposed of by her, one half of said residue to be divided equally between his brother Gustavus J. Cresap and his sisters, Mary B. Cresap and Rachel B. Cresap, and his niece, Nannie I. Evans, to have the remaining fourth; and in the event his said wife did not dispose of said one fourth, then the said fourth was to be divided between his brother Gustavus J. Cresap and any unmarried sister or sisters at her death. As to the fourth of said residue, which he directed his wife to dispose of, he clearly intended to give her the power to deed or will it to whom she might see proper, and this fourth she derived as a beneficiary under said trust declared in the first part of the instrument, and in the event that she does not dispose of it he directs how it shall be distributed.

It is earnestly contended by counsel for the appellee that said Agnes C. Cresap took an absolute fee-simple in the real estate of said testator by the first clause of said will, quoting from the case of *Milhollen* v. *Rice,* 13 W. Va. 519 : " It is settled that if a testator gives property to a devisee or legatee to use or dispose of at his pleasure; that is, to consume or spend, sell, or give away, at his pleasure, such devisee or legatee has the fee-simple or absolute property, even though his interest in it be called by the will a 'life-estate,' and there be a provision in the will whereby what may remain of the property at the death of the devisee or legatee is given to another person." But when we look at the language of the will that Judge GREEN, in delivering the opinion of the Court in that case was construing, it is found to be very different from the one we are considering. In that case the property was given to his wife to use or dispose of at her discretion during her natural life, and also to have the right of disposal at her death, and nothing is said about a trust. In the latter portion of said will said testator provided that his wife should own all of his lands during her life, to use as she might think proper, directing said lands to be sold at her death, and one half of the pro-

ceeds to go to his heirs (naming them) and the other half to be disposed of by his said wife, to whom she might think proper of her heirs.

The case of *May* v. *Joynes*, 20 Gratt. 692, is also cited to sustain the position that the wife took an absolute fee-simple in said estate under this will, but by reference to that case it will be found very different from the one at bar, for in that case, although the property was given her for life, she not only had full power to sell the same, convey absolute title to the purchasers, and use the money for investment or any purpose that she pleased, with only this restriction that whatsoever remains at her death shall, after paying the debts she may owe or any legacies that she may leave, be divided as follows *etc.* This gave her the full power to dispose of the property as she pleased, by will or otherwise, and is not an analogous case.

In the case of *Cole* v. *Cole*, 79 Va. 251, cited by counsel for the appellee, it was held that "it is a well-settled rule of law in the construction of wills that an absolute power of disposal in the first taker renders a subsequent limitation repugnant and void," referring to *May* v. *Joynes*, supra, and *Carr* v. *Effinger*, 78 Va. 197. In regard to this abstract proposition it is presumed there is no controversy where the first clause of a will does nothing more than confer an absolute power of sale, coupled with the right to use or dispose of the proceeds as the devisee may think proper. But as the Court holds in the same case (section 1 of the syllabus): "Little aid can be derived in the construction of wills from adjudicated cases, as each case must be governed by its own particuliar facts and circumstances."

In the case we are considering full power and privilege was given to the wife to sell and convey all or so much of his real estate in such manner as she might see fit, in as full and complete a manner as he himself could do, yet she was not allowed to use the proceeds of the real estate for her support, but she was allowed to sell and dispose of his personal estate, or so much as she might see fit, for her own support, according to her condition in life, and for the benefit of his estate. Then as to the real estate she might sell and convey, but the proceeds realized were to be held in trust

and for her support and maintenance during her life, and it is clear the trust applied to both the real and personal estate. Why does the testator limit her support to her condition in life if it was his intention that she was to use and enjoy the entire estate?

In Schouler on Wills (section 466) the author says: "The cardinal rule of testamentary construction, as already intimated, is that the plain intent of the testator, as evinced by the language of his will, must prevail, if that intent may be carried into effect without violating some deeper principle of public policy; and whatever respect the construction put upon corresponding words in other wills may deserve from the court by way of precedent this plain and lawful intent of the particular will should not be defeated. Courts have spoken of this intention as the law, the polar star, or the sovereign guide, when referring to this governing principle of testamentary clauses, and the doctrine in one formula or another is constantly affirmed in the reports. * * * * * But it is the intention of the testator, as expressed in his own will, which governs; and this intention must be discovered through the words of the will itself, as applied to the subject-matter and the surrounding circumstances." Again, he says, (section 468): "A testator's intention is, however, to be collected from the whole will taken together, and not from detached portions alone; for, as it is figuratively said, the meaning must be gathered *ex visceribus testamenti*, or, to use another familiar expression, from the four corners of the instrument."

Rule 7 for the interpretation and construction of wills, found in Redfield on Wills, (volume 1, p. 425, 4th Ed.) is as follows: "All parts of a will are to be construed in relation to each other so as if possible to form one consistent whole; but where several parts are absolutely irreconcilable the latter must prevail." This is a reasonable rule, and, it is believed, has been uniformly adopted and acted upon by the courts in the construction of wills. The trust declared in this will is not uncertain as to its object; neither can it be so considered as to quantity. Schouler on Wills (section 592) among other things, says: "The gift of what remains undisposed of may, indeed, be often repugnant to

the first gift, or too nearly so to vest a certain right. Nevertheless, a gift is good of what shall remain at the decease of the first taker, if the latter has only a life-estate given him, or if such gift is preceded by a power of disposition so restrained in its exercise that the gift of what is left refers evidently to what shall remain unappropriated and unappointed under the power. See 1 Jarm. Wills, 363–365."

In the case of *Johnson's Adm'r* v. *Billups*, 23 W. Va., 685, it was held, where land was conveyed to a grantee subject to the support of a certain man and his wife, not parties to the deed, during their natural lives, that "such a trust is not void for uncertainty, as by the support of man and wife is meant such support as is proper and suitable to them in their station in life, and the amount required to furnish such support can be ascertained with reasonable certainty." And here it was expressly declared that the support of the wife must be "according to her condition in life."

Again, Schouler on Wills (section 595) says : "Any particular will may disclose an intention to create a trust without clearly defining the objects or purposes of that trust. Expression of desire, accompanying a devise or bequest, are *prima facie* obligatory, moreover, and create a trust unless the actual intention appears different." In this connection we refer again to the language of the will : "At the death of my dear wife, Agnes C. Cresap, I desire the residue of my estate, both real and personal, to be distributed as follows." This will, and its provisions, can easily be relieved of any uncertainty as to quantity by ascertaining the amount the wife was entitled to for support according to her condition in life by referring the latter to a commissioner.

Looking to the entire will, I think the construction hereinbefore indicated is the proper one, and the decree complained of must be reversed, and the cause remanded to the Circuit Court of Randolph county for further proceedings to be had therein, and the appellee must pay the costs of this appeal.

REVERSED. REMANDED.