434

# Richmond

IDA SIMPSON, ET ALS, V. WILLIAM NICOL, ET ALS.

November 12, 1931.

Present, Prentis, C. J., and Campbell, Epes, Gregory and Browning, JJ.

The opinion states the case.

*George S. Harnsberger*, for the appellants.

*Ward Swank* and *Edward C. Martz*, for the appellees.

EPES, J., delivered the opinion of the court.

Miss Lucy L. Nicol, who was well advanced in years, died April 17, 1928, leaving a holograph will dated March 20, 1922, which, so far as here material, reads as follows:

"I, Lucy L. Nicol of the State of Virginia—Do bequest that after my death my real estate which consists of my

home on East Market street, Harrisonburg, Va., be sold. I bequeath one-half the amount received for this property to my nephew, William Nicol, I bequeath $1,000.00 to my cousin Ida Simpson. I bequeath $1,000.00 to my cousin Lizzie Bruffy. I bequeath $1,000.00 to Ella R. Arey of Harrisonburg, Va. My household property is not to be sold, it is to be divided between my cousin Lizzie Bruffy and Ella R. Arey. I have more than $400.00 in The First National Bank of Harrisonburg, Va., which is to be used for my burial expenses. If there should be any money of the real estate or personal property after the above bequests are paid I bequeath the residue to Ella R. Arey."

At the time of her death Miss Nicol's estate consisted of a house and lot in Harrisonburg, Virginia (the home place mentioned in her will), cash in bank $553.17, and a few articles of tangible personal property appraised at $172.50.

This suit, which was brought as a general creditors' suit for the settlement of the estate of Miss Nicol, was instituted by W. L. Arey and Ella R. Arey, his wife, to recover $1,375.-00 claimed to be due to them from Miss Nicol for board, care and attention furnished by them to her from April 1, 1922, to November 1, 1926, for which they allege Miss Nicol had informed them in March, 1922, she intended to recompense them by making provision for them in her will.

The will was not produced or probated by its custodian for more than fifteen months after the death of Miss Nicol; and this suit was instituted after the complainants had information that Miss Nicol had left what purported to be a will, but before they had any knowledge as to what provision was made in the will for them or either of them.

After the probate of the will Mr. and Mrs. Arey filed a pleading in which they "waive any and all claim against the estate, over and beyond that to which they are entitled by virtue of the said will;" but assert that the legacy given to Mrs. Arey was given for a valuable consideration, to-wit,

for board and services furnished by them to Miss Nicol, and therefore takes priority over the legacies to Miss Bruffy and Mrs. Simpson, which are gratuities. The evidence introduced shows the following facts:

Neither Mr. nor Mrs. Arey were in any way related to Miss Nicol or under any legal or moral obligation to support and care for her without remuneration.

Some time prior to October, 1909, Miss Nicol had rented her home place in Harrisonburg, Virginia, subject to the reservation of one room in the dwelling house, to W. R. Mauck, for a term expiring April 1, 1910, at $10.00 per month. On October 20, 1909, Mauck assigned his lease to W. L. Arey, who took possession of the property and continued to live thereon from October, 1909, to November 1, 1926, paying throughout this period a monthly rent of $10.00.

The uncontradicted testimony of Mr. W. P. Anthony, a real estate agent of Harrisonburg, is that "during the years 1913 to 1926, the fair rental value of this property, even with one of the lower rooms reserved by the owner, was $20.00 per month."

From 1909 to 1913 Miss Nicol occupied the room reserved by her, but boarded herself. From 1913 to 1926 Miss Nicol was furnished meals by the Areys, and Mrs. Arey gave her nursing and other personal attention when she needed it. On November 1, 1926, the Areys left Harrisonburg and moved to Eastern Virginia. What were the arrangements of Mrs. Nicol for board and attention from November, 1926, to the date of her death does not appear.

Neither Mr. nor Mrs. Arey have received any compensation for such board and services, unless it be that the fact that their monthly rent was not increased with the general increase in prices from 1913 to 1926 constituted compensation.

The only testimony bearing directly upon the alleged promise of Miss Nicol to compensate Mr. and Mrs. Arey

for the board and services furnished her by them is that of Mr. and Mrs. Arey, which is not contradicted.

Omitting certain questions which need not be stated and with minor modifications of his language to make connected statements, Mr. Arey testified as follows:

"Q. Did Miss Nicol at any time make any statement to you concerning your being compensated by her for the benefits which you were furnishing her?

"A. Yes, several times  *  *  *  . It was after she had boarded some length of time with us. She said ·that the $10.00 a month rent would not pay her expenses and her board, and that she was going to compensate Mrs. Arey in her will. She said she was going to give Mrs. Arey $2,000.00. We just continued to board her with that understanding. She was agreeable; we liked her in the house  *  *  *  I would say (it was) ten years before we left when she first talked about it. I can't say exactly when, but after she had boarded with us a while when she began to talk about paying.

"Q. In furnishing Miss Nicol the benefits which you did furnish her, were you relying on her statement as to compensation?

"A. Yes. It wouldn't look reasonable to board anybody for thirteen years without expecting some compensation. We expected compensation. She always left us under that impression. She figured her property would bring $8,000.00, which at one time it might have done."

Omitting certain questions and other matter not necessary to the understanding of her testimony, and with minor modifications of her language to make connected statements, Mrs. Arey testified as follows:

"Q. What benefits and services did you and your husband furnish to Miss Lucy Nicol, while you lived in her house?

"A. When we first began to do anything for her was in 1913—in May. She had a spell of sickness and I helped

to wait on her. She was in bed five weeks. I prepared her meals and helped wait on her. After she was able to be up she came to our dining room and boarded with us. In 1919, she had another spell of sickness, and I waited on her all by myself that time. * * * She was sick that time from about the middle of October until the second week of December she was out again. Miss Nicol boarded with us from the time she was sick in 1913 until we left there in 1926.

"Q. Did Miss Nicol at any time make any statement to you concerning your being paid or compensated by her for what you were doing for her?

"A. The first statement she ever made was in 1913. She said then that I had been kind to her and that she would have to do something for me. She was frail at that time, and had just gotten out of bed. After this she spoke of it time and again, that she wanted to do something for me. She spoke of it in this way; that I had been kind to her and that she was going to do something for me.

"Q. Did she ever make any reference to a will?

"A. Well, she didn't say so much about a will. She said something about it. She didn't say much about it until 1922. She talked about it then.

"Q. What did she say then?

"A. Well, pretty much like the will said. She said she was going to give the first half to Willie, and then told me about the cousins in Baltimore (Miss Bruffy and Mrs. Simpson). She told me she was going to give them $1,000.00 apiece; and she said she wanted me to have $1,000.00 and half of the household goods."

The tangible personal property of Miss Nicol was delivered by the administrator to Ella R. Arey and Lizzie Bruffy and is not involved in this litigation.

During the pendency of this suit the home place of Miss Nicol was sold for a gross price of $4,765.00; and the net amount realized from the sale, after payment of expenses

of the sale, amounted to $4,452.40. The cost of administration and all the debts due by Miss Nicol at the time of her death (except the claim of Mr. and Mrs. Arey for board, care and attention) have been paid from the cash in bank at the testator's death, leaving thereof a balance of $314.16. There, however, remained to be paid the cost of a tombstone over Miss Nicol's grave and the cost of this suit in the trial court, which items aggregated $250.01. It was, therefore, evident that the assets of the estate were not sufficient to pay in full the legacies bequeathed in the will.

The trial court held: (1) That Wm. Nicol was entitled to receive one-half of the *gross* proceeds of the sale of the home place, and (2) that the legacy to Ella R. Arey "is based upon a valuable consideration, and therefore has priority over the two legacies of $1,000.00 each to Lizzie Bruffy and Ida Simpson, which are gratuities," and is not subject to abatement for the payment of any part of the costs of administration or of this suit; and decreed that George S. Harnsberger, the administrator c. t. a. of the estate of Miss Nicol, administer her estate accordingly. From this decree Ida Simpson, Lizzie Bruffy and the administrator have taken an appeal, which appeal presents but two questions:

(1) Is Wm. Nicol entitled under the will to receive one-half of the gross proceeds of the estate, or only one-half of the gross proceeds of such sale after cost of sale has been deducted?

(2) Is the legacy of $1,000.00 bequeathed to Ella R. Arey entitled to priority over the legacies of $1,000.00 each bequeathed to Lizzie Bruffy and Ida Simpson?

We are of opinion that the trial court erred in its holding on both of these points.

On the first point it is sufficient to say that we think that the true interpretation of the will is that the testatrix's intention was to give to Wm. Nicol one-half of the net

proceeds of the sale of her home place after payment of the costs of the sale thereof, and not one-half of the gross proceeds of such sale.

On the second point we apprehend the law to be this: Where a general legatee asserts that his legacy is entitled to priority over other general legacies on the ground that the other legacies are gratuities, while his was given in extinguishment of an existing legal debt due by the testator to him, or in consideration of some other valuable consideration given or to be given by such legatee, to maintain his contention he must show one of the two following things:

Either he must show (1) that the will itself, either expressly or by clear implication from its language or its provisions, provides that the legacy is given in extinguishment of such debt or claim or for such other consideration; or (2) that he has a valid existing contract with the testator which, either expressly or by clear implication from the terms thereof, provides that the general legacy given to him shall have priority over the other general legacies.

If he show the first, his legacy is entitled to priority under the provisions, express or implied, of the will, and takes priority by virtue of and in accordance with the will. If he show the second, his legacy is entitled to priority under his contract, and is given priority by virtue of his contract and in derogation of the provisions of the will, which provides for no priority.

Where it is either expressly stated in the will, or is clearly to be implied from the language of the provisions of the will itself, that a general legacy is given in payment of an existing legal debt owing by the testator at the time of his death to the legatee, or in extinguishment of a legal claim of the legatee against the testator existing at the time of his death, or in consideration of a valuable consideration given or to be given by the legatee, such legacy takes prior-

ity over general legacies which are mere bounties of the testator, unless it appears from the language of the will that such was not the intention of the testator. *Matthews* v. *Targarona*, 104 Md. 442, 65 Atl. 60, 10 Ann. Cas. 153, and note; *Reynolds* v. *Reynolds*, 27 R. I. 520, 63 Atl. 804; *McLean* v. *Robertson*, 126 Mass. 537; *Cole* v. *Niles*, 3 Hun 326, affirmed 62 N. Y. 636; *First Natl. Bank* v. *Hessong*, 83 Ind. App. 531, 149 N. E. 190; 34 A. L. R., note page 1285. See also *Brown* v. *Brown*, 79 Va. 648, a case in which a legacy was given to the widow, decided after the enactment (Acts 1865-66, page 166, chapter 49) of the provisions contained in section 5120, Code 1919. In such cases the legatee is by the will itself put to an election between the assertion of his existing debt or claim against the estate and the benefit given by the will; and if he elect to take under the will, he in effect becomes a purchaser by reason of the relinquishment of his preexisting debt or claim, or the giving of the consideration. *In re Smallman's Will*, 139 Misc. Rep. 501, 248 N. Y. S. 716.

But we have been cited to no case, nor have we in a rather wide search found a case in which from the report of the case it appears that the court has gone further, and held that a general legacy to a person who has a valid legal claim against the testator, or to whom the testator owes a debt, takes by virtue of this fact priority over other general legacies, where the will neither expressly, nor by clear implication from the language or provisions thereof, puts the legatee to an election between the assertion of his claim or the collection of his debt and the benefits of the will; and on principle a general legacy to such a person in such a case has no priority. *In re Smallman's Will*, 139 Misc. Rep. 501, 248 N. Y. S. 716; *Heyer* v. *Moerlein* (Tex. Civ. App.) 94 S. W. 446, affirmed 100 Tex. 245, 97 S. W. 1040.

There is no reason why a testator may not make a person who is his creditor, or who has an enforceable claim

against him, an object of his bounty. So when a testator makes a bequest to such a person, there is nothing incompatible in his asserting the right to collect his debt or enforce his claim and also to receive the bequest given him, unless the will itself (either expressly, or by clear implication from its language or provisions) puts such legatee to an election between the collection of his debt or enforcement of his claim and the acceptance of the benefits given him by the will, or there is an existing contract between the testator and the legatee which by its terms, or by clear implication from its terms, makes it incompatible for him to assert both rights.

Thus in *Higginbotham* v. *Cornwell*, 8 Gratt. (49 Va.) 83, 56 Am. Dec. 130, decided before the enactment of the statute (Acts 1865-66, page 166, chapter 49; section 2270, Code 1887; section 5120, Code 1919) which provides that a devise to a widow shall be taken to be in lieu of dower, unless the contrary intention plainly appear from the will, it was held that for a provision made in a will for a wife by her husband to be held to be in lieu of dower, the will must so declare in terms, or that conclusion ought to be as clear and satisfactory from the provisions of the will as if expressed therein.

It is clear that in the instant case there is no language or provision in the will itself which either expressly or by implication provides that the legacy bequeathed to Mrs. Arey shall have priority, or from which it can be implied that it was given for a consideration or intended to have priority. Therefore, if it is entitled to priority it must be because of the terms of an existing contract between Miss Nicol and Mrs. Arey.

Where a testator has for a valuable consideration received, or to be received, specifically contracted with a person that he will make a specific will or a certain provision for him by will, such contract is enforceable, and a court of equity will not permit the testator to defeat the performance

thereof, in whole or in part, either by refusing to make a will or by making such other devises and bequests of his property as will, in whole or in part, defeat the performance of the testator's contract; and, as a means of enforcing the performance of such a contract, the court will, where it is the appropriate remedy, give to a legacy bequeathed in pursuance of such contract priority over other legacies. 28 R. C. L., Wills, sections 7 and 8 and cases there cited. But as has been noted, in such cases the legacy is given priority in derogation of the will, not in pursuance of the will.

However, in the instant case Mrs. Arey has not proven any contract, which, either expressly or by clear implication from the terms and provisions thereof, stipulates that the legacy to be left to her take priority over the legacies to Miss Bruffy and Mrs. Simpson, or any holding out by Miss Nicol to her that the legacy to be left to her should have such priority.

If there was any contract made by Miss Nicol with Mrs. Arey to recompense her for boarding and caring for her, it was that in consideration of these services Miss Nicol would, in her will, after leaving a specific legacy to Wm. Nicol, bequeath general legacies of $1,000.00 each to Miss Bruffy, Mrs. Simpson and Mrs. Arey, without anything being said, so far as the evidence shows, from which it can be inferred that the legacy to Mrs. Arey was to have priority over the legacies to Wm. Nicol, Miss Bruffy or Mrs. Simpson. Miss Nicol has left a will making identically the same provisions as the will which Mrs. Arey testifies Miss Nicol told her she had made or would make; and Mrs. Arey is entitled to receive such benefits, and only such benefits (see *Rice* v. *Hartman*, 84 Va. 257, 4 S. E. 621) as are given her by the will, when construed as a will is ordinarily construed.

For the reasons above stated we are of opinion that the court erred in holding that the legacy to Mrs. Arey was entitled to any priority over the legacies to Miss Bruffy and Mrs. Simpson.

The decree appealed from will be reversed, costs in this court awarded to the administrator payable out of the estate in his hands, and the cause remanded for further proceedings not in conflict with the views herein expressed.

*Reversed.*