. Don Harper,. *Executor of the Estate of Francis W. Whitecotton*

*v.*

Cumberland & Allegheny Gas Company, *et al.*, and Joe Smith and Mary Smith

(No. 10574)

Submitted September 7, 1954. Decided September 28, 1954.

*Joseph J. Madden,* and *A. E. Fiorentino,* for appellants.

*H. K. Higginbotham,* and *Robert E. Maxwell,* for appellee.

LOVINS, JUDGE:

This suit was instituted in the Circuit Court of Randolph County, West Virginia. The purpose of the suit was to settle the estate of Francis W. Whitecotton who died testate on the 13th day of October, 1949.

The suit was brought against the Cumberland Allegheny Gas Company, a creditor, Joe Smith, a creditor and a devisee, Mary Smith, a devisee and forty-one other persons who are devisees and creditors of Whitecotton, who will be hereinafter designated as the decedent. After the suit was instituted, one creditor came in by petition and proved his claim.

The aggregate of decedent's indebtedness as alleged in detail in the bill of complaint, including lien debts, is $5912.47, though the special reply of plaintiff later filed in this suit alleges that the indebtedness will not exceed $7500.00, and that the amount necessary to pay such debts and administration costs is approximately $8600.00, exclusive of inheritance tax, delinquent personal property tax, interest and penalties.

Forty-four parties were named as defendants in this suit, but since there is no question as to the amounts of debts and their right to payment, it is unnecessary to give their names and the exact amounts of the debts due such defendants.

The only question raised on this appeal relates to the claim of priority of the devise of a farm to Joe and Mary Smith, who contend that the devise to them was made for a consideration and that such devise is entitled to priority over the other devises made by the decedent.

Decedent owned a 20-21 interest in 100 acres of land situate in Leadsville.District, Randolph County, West Vir-

ginia, on which a house and other buildings were located. The decedent owned eight lots, a one-half undivided interest in one lot, and a one-third undivided interest in another lot, all of such lots being situate in the City of Elkins. On some of the lots buildings and other improvements are located and others are unimproved.

The bill of complaint alleges that the decedent left personal property of the value of $150.00, which came into the hands of the executor; that the debts of the decedent could not be satisfied out of the personal property, and that it was necessary to sell the real estate owned by the decedent to pay his debts.

The plaintiff executor prayed that his accounts be settled; that the amounts and priorities of the decedent's debts and the value of the real estate owned by him be ascertained; that such real estate or so much thereof as was necessary, be sold to pay the decedent's debts and the surplus be disposed of by a decree of the trial court.

The will of the decedent directed that his debts and funeral expenses be paid. By the various paragraphs of such will, he devised the lots situate in the City of Elkins to Mrs. Anna K. Smith, Mrs. C. A. Calkins, his sisters, and to Nellie and Charles Whitecotton. Though lot number 942, one of the lots that he owned in the City of Elkins is mentioned as having been devised, the devisee is not shown in the record.

The eighth paragraph of the will reads as follows: "I hereby give, devise and bequeath my farm on one hundred (100) acres, more or less, located on the Tygarts Valley River, in Leadsville District, Randolph County, to Mary Smith and Joe Smith, to share equally in said farm, provided however, that said Mary Smith and said Joe Smith pay to my sisters, Mrs. Anna K. Smith and Mrs. C. A. Calkins, seven-hundred-and-fifty-dollars ($750.00) each, and in event said Mary Smith and said Joe Smith do not desire to pay said money to my sisters, aforesaid, then I direct that this farm shall belong equally to my sisters, Mrs. Anna K. Smith and Mrs. C. A. Calkins."

The decedent disposed of his personal property by the ninth and residuary paragraphs of his will bequeathing such personal property to his two sisters and ended by directing that the plaintiff Don Harper be named as his executor.

The decree of sale is not shown in the record, but a decree confirming the sale of the various parcels of real estate owned by the decedent recited that the sale of the various parcels of real estate was made on the 23rd day of December, 1950. All of the sales so made by a special commissioner, except the sale of the 20-21 interest in the 100 acre tract of land, were confirmed by a decree rendered on the 4th day of January, 1951.

The record discloses that the interest in the 100 acre tract described in the decedent's will and devised to Joe and Mary Smith was sold to A. E. Fiorentino for the sum of $3,350.00, but as stated above, that sale was not confirmed until later. The aggregate sales prices of all the real estate owned by the decedent, except the interest in the 20-21 interest in the 100 acre tract of land, was $9,655.00. It is also recited in the decree that the Davis Memorial Hospital came in by petition and proved a claim against decedent's estate amounting to $101.00.

A special replication filed by the plaintiff avers that the sale of the interest in the 100 acre tract made to A. E. Fiorentino has been assigned to Joe Smith and Mary Smith, that the special commissioner has been paid one-third of the purchase price of the 100 acre tract in cash, and that such commissioner has in his possession two notes signed by Joe Smith and Mary Smith, payable in six and twelve months from date respectively, representing the balance of the purchase price.

By an answer verified on the 4th day of January, 1951, Joe and Mary Smith set up a claim to the effect that the devise of the 100 acre tract to them was entitled to priority over the other devises and aver their willingness to pay into court the $1500.00, provided for in the will of the

decedent. Joe and Mary Smith also by a petition filed on the 16th day of July, 1951, averred that the trial court had erroneously held that they were not entitled to priority over the other devises, set up specifically the conditions contained in the eighth paragraph of the will with reference to the payment of the $1500.00 to the two sisters of the decedent, allege that the provisions of the will amounted to a contract whereby the real estate devised to Joe and Mary Smith was sold to them for the sum of $1500.00, and that the contract was enforceable against the estate of the decedent. They prayed for permission to take testimony showing the intent of the decedent with respect to the 100 acre tract of land, and that they be granted a rehearing by the trial court, which was granted. If all such testimony was admissible, see *Hobbs, Ex'r.* v. *Brenneman, et al.,* 94 W. Va. 320, 118 S. E. 546, a question we do not decide, such testimony shows that Joe Smith and Mary Smith had lived on the 100 acre tract of land some time prior to the death of the decedent; that the decedent owed Joe Smith a "lot of money" for work done on the farm, though it is to be noted that Joe Smith filed, and was allowed, a claim against decedent's estate amounting to $225.85. The debt allegedly still owing was for improvements made to the fences on the farm, repairs to some houses situated thereon, for feeding and caring for livestock owned by the decedent and for furnishing him with products from the farm. The testimony relating to the amounts charged for the work done and the price of the feed furnished the livestock and produce from the farm is rather nebulous. Some mention is made that the amount still owed is $800.00 or $900.00. Joe Smith says however that he kept an account for some of the work of improvements and repairs to the house which represents some of the claim of $225.85 which was allowed. Joe Smith testified that he made no claim for other expenditures for repairs and materials.

Upon consideration of the answer and petition of Joe and Mary Smith and the testimony adduced in support of allegations contained therein, the Circuit Court denied

that the devise made to them was entitled to priority, confirmed the former holding of the court, likewise confirmed the sale of the interest in the 100 acre tract and directed that a deed be made to Joe and Mary Smith as purchasers. It is to be noted in passing that on the second hearing, the court construed the will of the decedent.

The question presented by this appeal is: Are Joe Smith and Mary Smith entitled to the farm as devisees upon the payment of $1500.00, or, are they required to pay the price bid for the farm of $3,350.00 by their attorney, A. E. Fiorentino and later assigned to them?

The plaintiff executor contends that it is an afterthought on the part of Joe and Mary Smith, they being required to pay more for the interest in the 100 acre tract of land as purchasers than they would be required to pay as devisees, and furthermore, they are not entitled to priority over the other devisees.

Several assignments of error are made which may be summarized: Are Joe and Mary Smith entitled to have the interest in the 100 acre tract devised to them discharged from the pro rata liability of the decedent's estate for his debts upon payment of the sum of $1500.00 to the decedent's sisters, or should the farm be treated like the other real estate owned by the decedent as being subject to the pro rata liability for the payment of decedent's debts?

This is a case of first impression in this jurisdiction. The question here presented is touched upon in the opinion of this Court in *Hogg* v. *Browning,* 47 W. Va. 22, 34 S. E. 754.

Joe and Mary Smith, who prosecute this appeal, rely on the intention of the testator as expressed in his will. It is true the intention of the testator as expressed in the will, if plain, clear and violating no rule of law or public policy, would control. *Couch* v. *Eastham,* 39 W. Va. 784, 3 S. E. 23; *Cresap* v. *Cresap,* 34 W. Va. 310, 12 S. E. 527; *Brookover* v. *Grimm,* 118 W. Va. 227, 190 S. E. 697. But

the intention to give priority of this devise over the other devises is not clearly established by the provisions of the will, and the oral testimony adduced in support of the contention of the devisees, Joe Smith and Mary Smith does not establish such intention. Parol evidence, with respect to the intent of the testator, is only admissible when there is a latent ambiguity in the will. *Hobbs, Ex'r.* v. *Brenneman et al., supra.* We find no such ambiguity in the will here considered.

Authorities have been cited showing decisions with respect to priority of legacies. We can see no reasonable ground for distinguishing between legacies and devises, and in a proper case, we would apply the same rule to devises as has been applied to legacies.

The general rule is stated as follows: "A distinction is usually made, for the purpose of determining questions of abatement, between a legacy which is given for value, and one which is given as a pure bounty. If the legacy is given for value, and the assets are not sufficient to pay, in full, all the legacies of that class, the legacy which is given for value will not abate until after the legacies which are pure bounties have abated. * * *." 4 Page on Wills, Lifetime Edition, Section 1501.

The question of abatement of legacies as shown by the authorities examined frequently arose in relation to the renunciation by a surviving spouse of dower rights.

The rule relating to creditors is stated as follows: "The general principle is frequently stated or recognized that where a testamentary gift is in payment of a legal debt owing by the testator or is founded upon some valuable consideration, it is, in case of a deficiency of assets, entitled to preference in payment over other general legacies which are mere bounties, * * *". 57 Am. Jur., Wills, Section 1464. As to intent of testator, see Annotation, 34 A. L. R. 1247.

A statement to the same effect will be found in 69 C. J., Wills, Section 288, et seq. See 28 R. C. L. §283.

We note in the case at bar that all of the devises are specific devises, and though the rights of a surviving spouse are not involved in this case, it is appropriate to consider some of the authorities pertaining to the question of priority accorded to beneficiaries under a will.

The doctrine with respect to preference of a surviving spouse seems to have originated from the decision of the Lord Chancellor Cowper in the case of *Burridge* v. *Bradyl,* 4 English Reports, Full Reprint, page 323; *Brown* v. *Brown,* 79 Va. 648. A testamentary provision in lieu of dower under which the surviving spouse relinquishes dower and accepts the testamentary provisions in lieu of dower, is entitled to preference over a devise to a person having no legal claim against the estate. *Muse* v. *Muse,* (Va.) 45 S. E. 2d 158; *Davis* v. *Davis,* (Va.) 123 S. E. 538; *In Re Hartman's Estate* (Iowa) 9 N. W. 2d 359; *Easterday* v. *Easterday* (Ind. App.) 10 N. E. 2d 764. See *Matthews* v. *Targarona* (Md. App.) 65 A. 60, 10 Annotated Cases 153; *Plum* v. *Smith* (N. J.) 62 A. 763; *Clayton* v. *Akin* (Ga.) 95 Am. Dec. 393; *Moore* v. *Alden* (Me.) 6 Am. St. Rep. 203; Annotation 2 A. L. R. 2d 608, et seq.

A surviving spouse, with respect to dower rights, occupies a favorable position, since dower is not subject to the satisfaction of debts of the deceased.

A surviving spouse who relinquishes dower right and elects to take a devise under a will is entitled to priority over a devise to persons who take property under the will as a bounty or gift.

It is a sound conclusion that a creditor of a deceased person who is likewise a legatee or devisee, does not occupy a position analogous to a devisee or legatee who relinquishes dower rights. There is no question in the instant case as to relinquishment of dower rights.

A creditor who asserts priority over a devisee or legatee of the same class, on the ground that the other devises are mere gratuities, and also contends that the devise made to him was made in the extinguishment of an exist-

ing debt due from the deceased to him or pursuant to a contract with the testator, is required to show one of the following: "Either he must show (1) that the will itself, either expressly or by clear implication from its language or its provisions, provides that the legacy is given in extinguishment of such debt or claim or for such other consideration; or (2) that he has a valid existing contract with the testator which, either expressly or by clear implication from the terms thereof, provides that the general legacy given to him shall have priority over the other general legacies." *Simpson* v. *Nicol* (Va.) 161 S. E. 63, 66.

In the instant case the will does not show by its language that it was given in the extinguishment of a legal debt, moreover, Mary Smith does not allege or attempt to prove that she was a creditor of the decedent.

The proof adduced by Joe Smith does not show the amount and prices of the work allegedly performed by him, nor does it disclose the quantity of farm produce or stock fed by him and the charges made therefor. Moreover, he has filed and proved a claim against the decedent's estate amounting to $225.85. This state of the record militates against the claim of Joe Smith as a creditor of the estate of the decedent. He has failed in his proof to meet the requirements of the rule regarding priority of a creditor of a decedent as above stated in *Simpson* v. *Nicol, supra*. See *In Re Wedmore,* 2 B. R. C. 502, 509; *McLean* v. *Robertson,* 126 Mass. 537. Note *Brill* v. *Wright,* 112 N. Y. 129, 8 Am. St. Rep. 717, and note appended thereto; *In Re Smallman's Will,* 248 N. Y. S. 716; *Matthews* v. *Targarona, supra*. Nor do the provisions of the decedent's will disclose that there was a valid existing contract between the testator and Joe Smith and Mary Smith.

We are impressed with the fact that Joe and Mary Smith did not assert a priority until after the sale of the decedent's real estate, and they being successful bidders for the farm through their attorney, occupy an unusual position, in that they now come into court and ask that the sale made to them be not confirmed. They, having made

an election to buy, now attempt to withdraw such election and to take as devisees under the will. This is inconsistent. We will not go so far as to say that such conduct creates an estoppel. They should not be allowed to disregard the action of the court in decreeing a sale at which they have participated as purchasers.

Upon the whole case, we find no error in the final decree rendered by the Circuit Court of Randolph County, and therefore, such decree is affirmed. The cause is remanded to that Court for disposition of the surplus, if any, remaining in the estate of the decedent.

*Affirmed and remanded.*